UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| QUIANA FRANKLIN, | Case No.: 16-cv-1371 |
| Plaintiff, | August 12, 2016 |
| -against- | |
| BANK OF AMERICA, N.A. | |
| Defendant. | |

## COMPLAINT

The Plaintiff Quiana Franklin, through her attorney, files this Complaint against Defendant Bank of America, N.A. ("Bank of America"), and in support thereof alleges as follows:

### Introduction

1. This is an action for damages, costs, and attorney's fees arising out of Bank of America's failure to convert the mortgage modification offer it made to Ms. Franklin into a permanent mortgage modification, even after Ms. Franklin accepted the offer and paid consideration. Ms. Franklin seeks relief pursuant to state common law claims sounding in breach of contract, promissory estoppel, and negligence, as well as the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq. ("CUTPA").

### Jurisdiction and Venue

2. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 as the parties are citizens of diverse states and the amount in controversy exceeds $75,000.

3. Venue in this District is proper as Ms. Franklin resides in Canton, Connecticut, Bank of America transacts business within the State of Connecticut, and the conduct complained of occurred in this District.

## Parties

4. The Plaintiff Quiana Franklin is a natural person who resides in the County of Hartford and owns the real property located at 50 East Hill Road, Unit 1E, Canton, CT 06019 (the "Property").

5. Ms. Franklin is a "natural person" under CUTPA under C.G.S. § 42-110a(3).

6. Bank of America, a federally chartered national bank association registered to do business in Connecticut, is engaged in the business of servicing residential mortgage loans in Connecticut, with its business address and mailing address located at 100 North Tryon Street, Charlotte, NC 28202.

7. During all relevant periods, Bank of America or its predecessors serviced the residential mortgage loan for the Property. Bank of America, having acquired its predecessors, assumed their rights and obligations in servicing the residential mortgage loan for the Property.

## Factual Allegations

8. Bank of America has engaged in the trade or commerce of servicing residential mortgage loans in Connecticut and in the judicial district of Hartford, along with other financial services, at all relevant times. Engaging in financial services such as mortgage servicing constitutes the primary trade or commerce of Bank of America.

9. Ms. Franklin defaulted on her mortgage obligations on or about March 1, 2012 resulting in Bank of America's commencement of a foreclosure case against her by summons and complaint served on or about October 3, 2012.[1]

10. By letter dated October 3, 2013, Bank of America offered Ms. Franklin a "Fannie Mae Trial Period Plan" that it informed her was the "next step toward qualifying for affordable and sustainable mortgage payments." The letter directed her to verbally accept by October 17, 2013 or make her first payment of $595.97 by November 1, 2013.

11. Upon information and belief, the modification offered was through the "Fannie Mae Mod 24 Program."

12. Upon information and belief, the net present value to the Federal National Mortgage Association ("Fannie Mae") of the modification exceeded the net present value of the unmodified mortgage note.

13. In accordance with the instructions, Ms. Franklin made the following payments to Bank of America:

    a. Payment by phone for $595.97 that was withdrawn from her account on November 1, 2013;

    b. Certified Check # 1130 for $596 that cleared her account on December 2, 2013;

    c. Check # 357 for $596 that cleared her account on January 2, 2014; and

    d. Check # 370 for $596 that cleared her account on February 18, 2014.[2]

---

[1] The case caption is <u>Bank of America, N.A. v. Franklin, Quiana P., et al.</u>, docket no.: HHD-CV12-6035960-S.

[2] Based on the language in the trial period offer, Ms. Franklin was awaiting a permanent loan modification agreement. When she did not receive an agreement by the middle of February, 2014, she made another payment that Bank of America accepted.

14. By letter dated February 19, 2014, Bank of America informed Ms. Franklin that she was "no longer eligible for [the modification] program" because she "did not make all of the required Trial Period Plan payments." This letter was dated the day after Ms. Franklin's fourth trial period payment had cleared her checking account.

15. Upon information and belief, the November 1, 2013 phone payment was lost or misapplied by Bank of America. Bank of America has never located where the funds went nor offered to return them to Ms. Franklin.

16. Upon information and belief, under applicable Fannie Mae guidelines Bank of America was not allowed to require a fourth trial period payment as a condition precedent to the issuance of a Fannie Mae Mod 24 Program modification.

17. At the time the modification was denied, Ms. Franklin accepted Bank of America's explanation because she thought that her fourth trial period payment had been late. She was not aware that Bank of America had actually lost her first trial period payment.

18. Unaware of any alternatives, Ms. Franklin proceeded to apply for a second modification. Upon information and belief, Bank of America denied her second application, and only authorized a modification after she appealed the denial.

19. The modification was made permanent approximately 12 months after it should have already been permanent. Upon information and belief, it includes several thousand dollars in capitalized, unsubstantiated servicer fees. The actual unauthorized servicer expenses, emotional damages, and ancillary punitive damages exceed $75,000.

## First Cause of Action
## Breach of Contract

20.     Ms. Franklin realleges the allegations contained in paragraphs 1 through 19 as if fully stated herein and further alleges as follows.

21.     Bank of America's failure to convert the Fannie Mae Mod 24 Trial Period offered on October 3, 2013 into a full-fledged, permanent loan modification starting February 1, 2014 was in bad faith and/or without justifiable cause.

22.     Bank of America lacked the discretion under the Fannie Mae Mod 24 Trial Period Plan to unilaterally, willfully, negligently, and/or in bad faith disregard its terms in the face of Ms. Franklin's compliance with her obligations thereunder.

23.     The Fannie Mae Mod 24 Trial Period Plan constitutes a valid and binding contract, as there is evidence of an offer, acceptance, and consideration. Bank of America offered, in a letter dated October 3, 2013, a Fannie Mae Mod 24 Trial Period Plan. Ms. Franklin accepted that offer by performing under its terms. Her agreement to reduce her monthly payment obligations, submission of three monthly payments, and her provision of financial information in exchange for modification of the mortgage note was consideration for the modification to the terms of the mortgage note.

24.     Bank of America's refusal to observe all terms of the Fannie Mae Mod 24 Trial Period Plan, including failing to provide Ms. Franklin with documentation reflecting a permanent modification of her note and mortgage and failing to modify her loan, constitutes a breach of contract.

25.     As a result of Bank of America's actions, Ms. Franklin has suffered damages including, but not limited to: late fees, attorney fees, and other foreclosure-related costs and fees

from February 1, 2014 (the date Bank of America should have recognized the permanent modification of her loan) to March 1, 2015 (the date Bank of America finally agreed to a permanent loan modification); ongoing damages related to accrued interest in excess of what she should have been charged; and emotional distress.

26. Bank of America's actions described in paragraphs 1-25 constitute an intentional or wanton violation of Ms. Franklin's rights or were done with a reckless indifference to those rights in that Bank of America knew that its representations were false or misleading or were recklessly indifferent to their truth or completeness. Its refusal to transition the Fannie Mae Mod 24 Trial Period Plan into a full-fledged, permanent modification was without reasonable justification or excuse.

27. Bank of America is liable to Ms. Franklin for all the damages she suffered.

## Second Cause of Action
### Promissory Estoppel

28. Ms. Franklin realleges the allegations contained in paragraphs 1 through 19 as if fully stated herein and further alleges as follows.

29. By letter dated October 3, 2013, Bank of America made a clear, definite, and intentional promise in the Fannie Mae Mod 24 Trial Period Plan that it would modify the terms of Ms. Franklin's loan effective February 2, 2014 if she complied with the terms of the Fannie Mae Mod 24 Trial Period Plan and her representations continued to be accurate. Ms. Franklin accepted this promise by complying with the terms of the offer. Bank of America should have reasonably expected that this promise would induce action or forbearance on Ms. Franklin's part.

30. By the terms of the offered Fannie Mae Mod 24 Trial Period Plan, Bank of America unambiguously committed itself to offering Ms. Franklin a loan modification. Bank of

America conditioned this promise only on Bank of America's receipt of three payments as provided in the Trial Period Plan.

31. Ms. Franklin reasonably relied on Bank of America's promise that a loan modification was forthcoming by (1) making payments under the Fannie Mae Mod 24 Trial Period Plan and one month thereafter; (2) submitting all supporting documentation; and (3) forgoing other actions that could have either lowered the risk of foreclosure such as a Chapter 13 bankruptcy proceeding or protected her against personal liability such as a negotiated sale or title transfer.

32. Despite accepting all three of Ms. Franklin's payments under the Fannie Mae Mod 24 Trial Period Plan, Bank of America failed to honor its promise to send Ms. Franklin a modification agreement by February 1, 2014 or communicate any reason why it would not recognize that the terms of the loan had been permanently modified as a result of Ms. Franklin's successful completion of the Trial Period Plan.

33. Without further direction or communication from Bank of America, Ms. Franklin made an additional payment of $596.

34. Bank of America accepted Ms. Franklin's four payments. However, on February 19, 2014, Bank of America informed Ms. Franklin by letter that she had defaulted on the Fannie Mae Mod 24 Trial Period Plan. Ms. Franklin reasonably relied on Bank of America's promise to recognize a permanent loan modification agreement upon her successful completion of the Trial Period Plan. As a result of Bank of America's failure to fulfill its promise, Ms. Franklin's options to avoid foreclosure or avoid personal liability were more limited in March 2015 than they were in October 2013, when Bank of America offered the Trial Period Plan. For instance, the interest and late fees that accrued during this period made it more difficult for Ms. Franklin to

restructure her debt in bankruptcy in March 2015 than it would have been in October 2013 had she not relied on Bank of America's promise.

35. In addition, Bank of America lost $595.97 that should have been applied to reduce Ms. Franklin's total loan balance.

36. Ms. Franklin's reasonable reliance on Bank of America's promise to acknowledge a permanent loan modification effective as of February 1, 2014 foreseeably caused her to fall further behind on her loan and a judgment of strict foreclosure was entered on June 17, 2014.

37. Ms. Franklin suffered injury because of her reasonable and foreseeable reliance on Bank of America's clear and definite promise that she would be offered a permanent loan modification if she complied with the terms of the Fannie Mae Mod 24 Trial Period Plan. Ms. Franklin's injuries include, but are not limited to: late fees, attorney fees, and other foreclosure-related costs and fees from February 2, 2014 through March 1, 2015; lost ability to pursue other alternatives to foreclosure that would have been available to her; and emotional distress.

38. By reason of its actions, Bank of America is estopped from denying its obligation to provide a full-fledged, permanent modification agreement, as required by the terms of the Fannie Mae Mod 24 Trial Period Plan that Bank of America offered to Ms. Franklin. Bank of America is therefore liable to Ms. Franklin for damages caused by her reasonable reliance on Bank of America's clear and definite promise to provide her a loan modification agreement no later than February 1, 2014. Based on Ms. Franklin's actions and forbearance made in reliance on Bank of America's promise, injustice can be avoided only by enforcing against Bank of America the promises it made in the Fannie Mae Mod 24 Trial Period Plan.

## Third Cause of Action
### Violation of CUTPA

39. Ms. Franklin realleges the allegations contained in paragraphs 1 through 19, as if fully stated herein and further alleges as follows.

40. Bank of America negligently, unscrupulously, and wrongfully disregarded its duty as servicer of the mortgage, and engaged in unfair and deceptive trade acts and practices throughout the process of evaluating Ms. Franklin for a loan modification, causing her financial harm and emotional distress.

41. Bank of America offered Ms. Franklin a Fannie Mae Mod 24 Trial Period Plan.

42. Ms. Franklin actually made all payments required under the plan in a timely fashion, and made one additional payment.

43. Bank of America lost or misapplied her payments.

44. As a result of losing or misapplying payments, Bank of America erroneously denied Ms. Franklin for a permanent mortgage modification.

45. The funds were transferred from a Bank of America checking account to an unknown Bank of America account. Bank of America has failed to perform its most basic function as a bank: maintain an accurate internal record of where its customers' funds are held.

46. The Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5301 et seq., ("Dodd-Frank") became law in July 2010. This law established the Consumer Financial Protection Bureau (CFPB). In 2013, the CFPB issued amendments to Regulation X, Mortgage Servicing Rules under the Real Estate Settlement Procedures Act ("Regulation X"). Bank of America violated the public policy set forth in Regulation X as follows:

   a. Section 1024.38(2) of Regulation X, denominated "Properly evaluating loss mitigation applications" requires servicers to "[p]roperly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options for which the borrower may be eligible pursuant to any requirements

established by the owner or assignee of the borrower's mortgage loan…" Bank of America violated this policy by improperly denying Ms. Franklin for a loan modification on February 19, 2014.

  b. Section 1024.35(b)(5) of Regulation X, enumerates several specific errors that a servier must correct, one of which is to impose "a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." The official interpretation defines unreasonable basis as fees that are not "*bona fide*." Bank of America violated this policy by imposing a charge of $19,589.27 that (i) it has refused to substantiate and (ii) upon information and belief, lacked a reasonable basis to impose in connection with a permanent loan modification.

47. Dodd-Frank also resulted in amendments to Regulation Z, the implementing regulations of the Truth-in-Lending-Act ("TILA"). Regulation Z evidences a policy of requiring creditors to promptly credit a payment to a consumer's account as of the date of receipt. Bank of America violated the public policy set forth in Regulation Z as follows:

  a. Section 226.10 of Regulation Z requires that "[a] credit shall credit a payment to the consumer's account as of the date of receipt." Bank of America violated Regulation Z in that it has failed to credit Ms. Franklin's account for the November 1, 2013 payment through the present;

48. On April 13, 2011, the Office of the Comptroller of the Currency ("OCC"), Bank of America's principal banking regulator, entered into a consent agreement with respect to Bank of America's foreclosure, default servicing, and loss mitigation practices ("Consent Order"). Among other things, the Consent Order required Bank of America to establish policies, procedures, and controls to ensure that, *inter alia*:

  a. Borrowers generally would not be required to resubmit the same documentation that had already been provided, and that borrowers would be notified promptly of the need for additional information;

  b. Bank of America followed "appropriate deadlines for responses to borrower communications and requests for consideration of Loss Mitigation, including deadlines for decision-making on Loss Mitigation Activities, with the metrics established not being less responsive than the timelines in the HAMP

       program;"

   c. "an easily accessible and reliable single point of contact for each borrower [was provided] so that the borrower has access to an employee of the Bank to obtain information throughout the Loss Mitigation, loan modification, and foreclosure processes";

   d. "the single point of contact has access to current information and personnel (in-house or third-party) sufficient to timely, accurately, and adequately inform the borrower of the current status of the Loss Mitigation, loan modification, and foreclosure activities"; and

   e. "staff are trained specifically in handling mortgage delinquencies, Loss Mitigation, and loan modifications."

49. Bank of America improperly required Ms. Franklin to submit duplicative information when it issued a wrongful denial to her and then solicited her for a new mortgage modification application.

50. Bank of America failed to comply with its own deadline for finalizing Ms. Franklin's modification when it sent her a letter on February 19, 2014 denying her permanent modification, 50 days after it should have already finalized her loan modification.

51. Bank of America failed to provide an easily accessible single point of contact for her. Specifically, on March 5, 2014 Bank of America sent Ms. Franklin a letter stating that she had not made her last four mortgage payments. After receiving that letter, Ms. Franklin attempted to reach her single point of contact "Jason," multiple times. She left him two voice messages and then, through another customer service representative, set up an appointment for him to call her. He failed to call her. When she finally made contact with "Jason," he told Ms. Franklin that he could not tell her anything pertaining to her case.

52. Bank of America's conduct in servicing Ms. Franklin's loan also contradicts the standards it agreed to maintain when it entered into a consent judgment with the State of

Connecticut and other state and federal actors on April 4, 2012, in the United States District Court for the District of Columbia in the matter *United States of America et al.* v. *Bank of America et al.*, case no. 1:12-cv-00361-RMC (such judgment, the "National Mortgage Settlement").

53. The servicing standards in the National Mortgage Settlement require Bank of America to adhere to minimal levels of quality in default mortgage servicing. The standards include, but are not limited to, the requirement that Bank of America maintain adequate staffing and systems for tracking borrower documents and information relevant to loss mitigation, and for communicating with borrowers.

54. As set forth above, Bank of America was unable to provide Ms. Franklin timely and accurate information regarding her loss mitigation status. It was unable to maintain accurate records of payments she had made. Finally, it was unable to maintain sufficient staffing levels to timely and accurately communicate with Ms. Franklin.

55. Bank of America's conduct in respect to servicing Ms. Franklin's loan is also prohibited by Mortgage Servicing Rules under the Real Estate Settlement Procedures Act, Regulation X, 12 C.F.R § 1024. Although the Rules were not in effect until January 10, 2014, they embody the industry standard and public policy as it relates to mortgage servicing.

56. Connecticut's statutes and court rules regarding foreclosure mediation reflect a desire to determine whether homeowners and foreclosing parties can reach resolution with reasonable speed and efficiency through good faith participation in the mediation process. For instance:

    a. a foreclosing party may not charge the other party for the expenses of its attorneys if it fails to comply with certain statutory requirements requiring its ability to participate meaningfully within mediation without unreasonable

        delay; and

    b. a court may impose sanctions on a party who engages in international or a pattern or practice of conduct during the mediation process that is contrary to the desire to timely and, in good faith, reach resolution.

57. After Bank of America improperly denied Ms. Franklin for a permanent mortgage modification, it and its foreclosure counsel requested termination from the mediation program and restarted the foreclosure track. It sought and obtained a judgment of foreclosure on June 17, 2014 with a law day of October 27, 2014. Bank of America refused to vacate that judgment even after it was provided evidence of its own mistakes, and instead Ms. Franklin was forced to expend time and money to bring her own motion to vacate the judgment.

58. Since January 1, 2013, over 1800 mortgage-related complaints have been filed with the CFPB against Bank of America. Upon information and belief, many of these complaints related to errors and omissions made by Bank of America in the loan modification process.

59. Bank of America failed to timely and efficiently review Ms. Franklin's loan modification applications, and charged Ms. Franklin's account with its attorney fees despite its failures to comply with its duties under the mediation statutes.

60. Bank of America's conduct with respect to servicing Ms. Franklin's mortgage was immoral, unethical, oppressive, and unscrupulous. Ms. Franklin diligently engaged in the loan modification application process with Bank of America for more than two years and submitted multiple applications and supplementary documentation. Yet Bank of America's pattern of failing to communicate diligently with Ms. Franklin, making duplicative and unnecessary document requests, improperly denying her repeatedly for a loan modification, and its regular practice of causing delay exhibited blatant disregard for Ms. Franklin's well-being.

61. Bank of America's conduct with respect to servicing Ms. Franklin's mortgage caused her substantial injury. This injury was not outweighed by any countervailing benefits to consumers that the conduct produced, nor was it one that Ms. Franklin could have reasonably have avoided.

62. Bank of America's actions in relation to servicing Ms. Franklin's mortgage were done in the conduct of trade or commerce.

63. Bank of America's continuous course of conduct constitutes unfair and/or deceptive acts and practices in the conduct of trade or commerce in violation of Conn. Gen. Stat. § 42-110b. Bank of America was unfair and/or deceptive by, for instance:

   a. failing to exercise reasonable diligence in reviewing Ms. Franklin's loan modification applications;

   b. repeatedly requesting duplicative, unnecessary, or updates to documentation during the application process without reasonable justification or excuse after it improperly denied her for a loan modification;

   c. causing an undue delay of at least one year in offering Ms. Franklin a trial and permanent loan modification;

   d. repeatedly changing the personnel responsible for communicating with Ms. Franklin; and

   e. discouraging her from participating in the Court's foreclosure mediation sessions by telling her it had not received her trial period payments and using that as justification for moving for termination of the mediation period.

64. Bank of America's actions and practices offend public policy regarding mortgage servicers' treatment of their customers such as, for instance, requirements that servicers to act with reasonable diligence in reviewing a homeowner's request for modification, avoid unnecessary delay, and communicate promptly with the homeowner about needs for additional or clarifying documentation. This public policy is reflected in: (1) the 2011 OCC Consent Order,

(2) the servicing standards in the National Mortgage Settlement, and (3) the CFPB's Mortgage Servicing Rules promulgated under RESPA, (4) the Federal Reserve Board's regulations promulgated under TILA, and (5) Connecticut's foreclosure mediation statutes and rules.

65. The conduct of Bank of America, as described above, was the actual and proximate cause of the ascertainable loss and substantial injury suffered by Ms. Franklin within the meaning of Conn. Gen. Stat. § 42-110g(a). As a direct, proximate, and foreseeable result of said conduct, Ms. Franklin has incurred costs including, but not limited to, a higher monthly mortgage payment, a larger capitalized balance including an inexplicable servicing charge of $19,589.27, additional bank attorney fees, additional interest, additional "default fees," and attorney fees she incurred while trying to obtain a modification. In addition, Ms. Franklin was emotionally damaged through the high levels of stress she experienced because of the way Bank of America drew out the modification application and foreclosure process. Ms. Franklin's quality of life has deteriorated as a result of Bank of America's conduct.

66. Bank of America profited from the financial injury it caused Ms. Franklin. As a proximate result of its negligent conduct and the delay it has caused, Bank of America charged a higher interest rate than was warranted, charged Ms. Franklin default fees, and charged Ms. Franklin attorney fees associated with the prior foreclosure action. Bank of America engaged in an unfair and deceptive practice by maintaining policies of neglecting to adequately train its employees about loss mitigation and neglecting to provide sufficient staff to handle modifications in a timely and ethical manner that caused substantial injury to consumers, including Ms. Franklin.

67. Ms. Franklin could not have reasonably avoided Bank of America's actions and practices, as she was in a relatively powerless bargaining position with Bank of America. She

could not refinance or otherwise pay off her mortgage with Bank of America. If Ms. Franklin refused to comply with Bank of America's confusing and inaccurate demands, she would put herself at grave risk of losing her home.

68. The type of conduct in which Bank of America engaged causes injuries to consumers like Ms. Franklin that are not outweighed by any countervailing benefits to consumers or to competition.

69. Bank of America is not liable to Ms. Franklin per the terms of any consent order, settlement, or agreement it maintains with the federal government, nor is she seeking any remedy provided for therein; it is, however, liable in tort for damages caused by the CUTPA violations described herein.

70. The foregoing conduct of Bank of America demonstrates willful, knowing, calculated, deceitful, and unfair conduct, and reckless indifference to Ms. Franklin's rights. Accordingly, Ms. Franklin is entitled to punitive damages and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g(a).

71. Pursuant to Conn. Gen. Stat. § 42-110g(c), contemporaneous with the service of this Complaint, Conn. Gen. Stat. § 42-110g(c) gave due notice of her claims to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut by electronic mail.

## Fourth Cause of Action
### Negligence

72. Ms. Franklin realleges the allegations contained in paragraphs 1 through 19 and 39 through 71 as if fully stated herein and further alleges as follows.

73. Bank of America owes a duty of care to the customers whose loans it services, including Ms. Franklin. Such a duty arises, in part, out of servicing standards imposed by the OCC Consent Order, the National Mortgage Settlement, the Connecticut foreclosure mediation statutes and court rules, and Regulation X. See Count III, supra. Ms. Franklin, as a borrower of a federally-related residential mortgage, is within the class of persons that RESPA and Regulation X were intended to protect.

74. Furthermore, Bank of America assumed a duty to diligently and non-negligently review Ms. Franklin's loan modification applications when it solicited and invited her to apply for such assistance. Bank of America took an active role in Ms. Franklin's financial affairs by (1) soliciting her for a loan modification, (2) accepting personal financial information and documentation from her in support of a loan modification and (3) offering her a trial period mortgage modification. As a result, it assumed a duty to engage in loss mitigation servicing with respect to the modification in a non-negligent manner.

75. Finally, as a large, federally regulated bank and mortgage servicer, Bank of America has a general duty not to lose money given to it by its customers. Specifically, Bank of America has a duty to properly accept and apply customer payments, refrain from assessing non-bona fide charges and fees, properly process and acknowledge information and correspondence regarding the loan, and utilize and maintain systems to properly manage loan accounts.

76. Bank of America knew or should have known that by doing the following it would cause Ms. Franklin harm:

  a. Losing or misapplying trial period payments;

  b. Issuing wrongful loan modification denials;

    c. 'Dual-tracking' or moving Ms. Franklin's foreclosure case towards judgment when it should have provided her with a loan modification;

    d. Failing to provide servicer personnel who were able to provide timely and accurate information regarding the loss mitigation process;

    e. Charging fees that it lacked a reasonable basis to impose; and

    f. Failing to impose proper accounting systems, software programs, servicer platforms and other techniques to properly manage Ms. Franklin's account.

77. Bank of America breached its duty of care by engaging in the continuing course of conduct detailed herein.

78. Bank of America's breach of its duty led to significant financial injury to Ms. Franklin in the form of thousands of dollars in foreclosure fees and other default-related fees and costs and excessive interest added to her mortgage balance.

79. The lengthy loan modification process and the wrongful foreclosure judgment also caused emotional damages through prolonged and extensive stress to Ms. Franklin and significantly deteriorated her quality of life.

80. The financial and emotional injury to Ms. Franklin was a direct and foreseeable result of Bank of America's negligence, breach of its duty of care, and violations of RESPA and Regulation X.

81. Bank of America is liable for the damages suffered by Ms. Franklin by its negligent acts and omissions.

**RELIEF**

The Plaintiff respectfully requests that judgment be entered against the Defendant for the following:

(1) Actual and consequential damages;

(2) Punitive damages in an amount calculated to punish Bank of America for its willful and egregious conduct, pursuant to C.G.S. § 42-110g(a);

(3) Costs and reasonable attorney's fees pursuant to C.G.S. § 42-150bb and C.G.S. § 42-110g(d); and

(4) For such other and further relief as the Court deems just and proper.

THE PLAINTIFF,
QUIANA FRANKLIN


By Counsel: /s/ David Lavery
David Lavery (ct29971)
Jeffrey Gentes (ct28561)
Connecticut Fair Housing Center
221 Main Street, 4th Floor
Hartford, CT  06106
(860) 560-8948
(860) 247-4236 fax
dlavery@ctfairhousing.org